**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| REBECCA PAREJEO-YEPEZ, an individual, on behalf of herself and all other similarly situated, | Case No.: |
| | **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES** |
| Plaintiff, | **CLASS ACTION** |
| v. | |
| COMMUNITY CHOICE CREDIT UNION, | |
| Defendant. | |

Plaintiff Rebecca Parejo-Yepez ("Plaintiff" or "Parejo-Yepez"), individually and on behalf of all others similarly situated, by her attorneys, brings the following allegations, based on information and belief, against Defendant Community Choice Credit Union ("Defendant" or "CCCU"):

## INTRODUCTION

1.      Defendant CCCU follows a policy of denying full access to financial products and services to applicants on the basis of their alienage, including those who have conditional permanent residence.

2.      Plaintiff Parejo-Yepez and members of the Class she seeks to represent were and are unable to access Defendant's credit and loan products because of their alienage. Plaintiff Parejo-Yepez brings this case against CCCU for unlawful discrimination on the basis of alienage in violation of the Civil Rights Act of 1866, as codified at 42 U.S.C. § 1981 ("Section 1981").

1

3.  Defendant's violations have inflicted harm on Plaintiff Parejo-Yepez, and the Class she seeks to represent, including but not limited to, emotional distress.

## JURISDICTION

4.  This Court has subject matter jurisdiction over Plaintiff's Section 1981 claims under 28 U.S.C. § 1331.

5.  This Court may issue a declaratory judgment under 28 U.S.C. §§ 2201 and 2202.

6.  Venue is proper in this district under 28 U.S.C. § 1391(b)(2), where Defendant conducts business, the Plaintiff resides, and a substantial part of the events giving rise to the claims occurred.

## PARTIES

**Plaintiff**

7.  Plaintiff Rebecca Parejo-Yepez is a resident of Madison Heights, Oakland County, Michigan and has been a conditional permanent resident since in or around November 2023. As a conditional permanent resident, Plaintiff Parejo-Yepez received a Green Card, possesses a Social Security Number, and is authorized to work in the United States. Plaintiff Parejo-Yepez resided in Madison Heights on the dates that she sought the credit and loan products that Defendant CCCU unlawfully denied.

8.  Defendant CCCU subjected Plaintiff Parejo-Yepez and members of the Class that she seeks to represent to discrimination in violation of federal law as described in this Complaint.

**Defendant**

9.  Defendant CCCU is a state-chartered, member-owned credit union that serves individuals who live, work, or worship in the State of Michigan.

10. CCCU is headquartered in Farmington Hills, Michigan. CCCU's headquarter office is located at 31155 Northwestern Hwy, Farmington Hills, MI 48334.

11. CCCU offers consumers a range of financial and credit products, including savings and checking accounts, credit cards, personal loans, auto loans, home equity loans, and mortgages.

## STATEMENT OF FACTS

12. Plaintiff Parejo-Yepez brings this action on behalf of herself and members of the proposed Plaintiff Class. This Class seeks damages, declaratory judgment, and injunctive relief.

13. Plaintiff Parejo-Yepez is a Canadian citizen who became a conditional permanent resident of the United States in or around November 2023. Since that time, she has continuously possessed a Green Card and a Social Security Number, and she is authorized to work in the United States.

14. In or around January 2024, Plaintiff Parejo-Yepez and her United States Citizen husband, Daniel Parejo-Yepez, went to CCCU's physical branch located in Warren, Michigan to open a checking account for Plaintiff Parejo-Yepez.

15. Plaintiff Parejo-Yepez and her husband met with CCCU Personal Advisor, Breanna Rowe ("Rowe"), who helped Plaintiff Parejo-Yepez become a CCCU member and open a checking account with CCCU.

16. During that initial meeting, Plaintiff Parejo-Yepez explained to Rowe that she had recently immigrated to the United States and was looking to build credit and to finance repairs on their home.

17. On or about February 16, 2024, Rowe emailed Plaintiff Parejo-Yepez and asked if she needed any assistance from CCCU.

3

18. Plaintiff Parejo-Yepez replied to Rowe's email on or about March 11, 2024, and asked her about CCCU's credit card and auto loan options. On or about that same day, Rowe responded summarizing CCCU's "beginner-friendly" Platinum MasterCard credit card and stated the interest rate would be "22.24%, assuming there is no credit history when we do the pull."

19. On or about April 12, 2024, upon information and belief, Rowe submitted an application for CCCU's Platinum MasterCard on Plaintiff Parejo-Yepez's behalf.

20. On or about the same day, CCCU denied Plaintiff Parejo-Yepez an unsecured credit card. Rowe emailed Plaintiff Parejo-Yepez to inform her that CCCU was only willing to lend her secured funds. Rowe stated, "So, basically, a cash secured credit card. If you gain citizenship, and can provide me with a Michigan driver's license, I can get you an unsecured card." Rowe explained this was due to Plaintiff Parejo-Yepez being "considered a permanent resident only until November of 2025." Rowe mentioned to Plaintiff Parejo-Yepez that "there are financial institutions that do not have this requirement like we do."

21. In response, on or about that same day, Plaintiff Parejo-Yepez emailed Rowe a copy of her Michigan driver's license.

22. On or about April 13, 2024, Rowe emailed Plaintiff Parejo-Yepez to clarify "it's either a US Passport [sic] or certificate of naturalization that we would require in order to move forward with a credit card." Rowe further advised that "this credit card being denied does not affect your membership with us."

23. On or about the same day, Plaintiff Parejo-Yepez responded to Rowe's email asking how CCCU's requirements would affect future loan applications. Rowe responded, "[o]nce citizenship is gained, I can make lending happen through CCCU. So that Home Equity

4

[loan] option is not out of the question, but either A) the citizenship just has to happen first, or B) We [sic] process the Home Equity [loan] in someone else's name."

24.     On April 19, 2024, Plaintiff Parejo-Yepez emailed Rowe to ask if she could apply for a Home Equity Line of Credit ("HELOC").

25.     Rowe responded on or about April 23, 2024 that Plaintiff Parejo-Yepez's husband could apply for the loan, but that for CCCU to add Plaintiff to the application she would either need to "A] get a permanent resident card that has a further out expiration date… or B] gain citizenship and provide us proof of that."

26.     On or about the same day, Plaintiff Parejo-Yepez emailed Rowe to ask if CCCU could at least consider her income for her husband's HELOC application because her husband was unable to work at the time. On or about the same day, April 23, 2024, Rowe responded that that was not an option.

27.     On or about May 5, 2024, Plaintiff Parejo-Yepez emailed Rowe to express that she felt CCCU's denials were discriminatory. The following day, on or about May 6, 2024, Rowe responded that she was escalating Plaintiff Parejo-Yepez's concerns to Rowe's supervisor.

28.     On or about May 9, 2024, Plaintiff Parejo-Yepez had a phone conversation with Rowe's supervisor.[1] The supervisor informed her that she would be eligible for a personal loan with CCCU and encouraged her to apply.

29.     On or about June 3, 2024, Plaintiff Parejo-Yepez emailed Rowe to begin an application for a personal loan. CCCU told Plaintiff Parejo-Yepez that due to the expiration date of her Green Card, CCCU would make the loan term 12 months — the expiration date of her Green Card minus 6 months. On or about that same day, Plaintiff Parejo-Yepez emailed Rowe

---

[1] Plaintiff has not ascertained the identity of Rowe's supervisor.

5

and asked if CCCU could extend the term of the proposed loan so that she would not have such a large monthly obligation.

30. On or about June 5, 2024, Rowe helped Plaintiff Parejo-Yepez submit a personal loan application.

31. On or about that same day, Rowe informed Plaintiff Parejo-Yepez that CCCU denied her personal loan application due to the large monthly payments required on the 12-month term loan, and that CCCU could not extend the term of the proposed loan.

32. On or about the same day, Plaintiff Parejo-Yepez and Rowe had a phone call to discuss the denial, and Rowe agreed to have one of CCCU's senior credit analysts[2] review the personal loan denial.

33. On or about the same day, Rowe emailed Plaintiff Parejo-Yepez to inform her that the senior credit analyst reviewed the denial and affirmed the decision. Rowe explained that the loan term could not be extended due to the expiration date on Plaintiff Parejo-Yepez's Green Card, "as these PR [Permanent Resident] cards can be revoked."

34. Plaintiff Parejo-Yepez suffered harm from CCCU's denial of both her credit card and personal loan applications on the basis of her alienage, as well as CCCU's refusal to allow her to apply for a HELOC on the basis of her alienage. Defendant's actions and denials caused Plaintiff Parejo-Yepez to feel the deleterious effects of discrimination and to suffer harm, including actual damages, emotional distress, and other negative effects.

35. CCCU's refusal to allow Plaintiff Parejo-Yepez to apply for a HELOC and its denials of her credit card and personal loan applications because of its limited and arbitrary alienage requirement violate 42. U.S.C. § 1981.

---

[2] Plaintiff has not ascertained the identity of the Senior Credit Analyst.

36. There is an actual and substantial controversy between Plaintiff Parejo-Yepez and CCCU.

## CLASS ACTION ALLEGATIONS

37. Plaintiff Parejo-Yepez incorporates by reference the allegations raised in all preceding paragraphs.

38. Plaintiff Parejo-Yepez brings this action on behalf of herself and all others similarly situated under Rule 23 of the Federal Rules of Civil Procedure.

39. Plaintiff Parejo-Yepez seeks to represent the following Class composed of, and defined, as follows:

> All persons who resided in the United States at the relevant time they applied for or attempted to apply for a credit or loan product from CCCU but were denied full and equal consideration by CCCU on the basis of alienage or lack of U.S. citizenship.

40. Plaintiff Parejo-Yepez may amend the above class definition as permitted or required by this Court. This action has been brought and may be properly maintained as a class action under the provisions of Rule 23 of the Federal Rules of Civil Procedure because all of the prerequisites for class treatment are met.

**Rule 23(a)(1) – Numerosity**

41. The potential members of the Class as defined are so numerous that joinder would be impracticable.

42. The members of the Class are an ascertainable group that, on information and belief, consists of at least dozens of individuals.

43. With discovery, the size of the Class will be ascertainable. The names and addresses of many potential Class Members are available to Defendant.

44. Notice can be provided to the potential Class Members via first class mail using techniques and a form of notice similar to those customarily used in class-action lawsuits, as well as by published or similar notice for any Class Members unknown to Defendant.

**Rule 23(a)(2)**

45. There are questions of law and fact common to the Class that predominate over questions affecting only Plaintiff Parejo-Yepez or any other individual Class Members. These common questions of law and fact include, without limitation:

    a. Whether it is CCCU's policy and practice to reject applicants for credit or loan products on the basis of alienage;

    b. Whether CCCU violated 42 U.S.C. § 1981 by denying the full and equal right to contract to Plaintiff Parejo-Yepez and the Class on the basis of alienage;

    c. Whether Plaintiff Parejo-Yepez and the Class Members are entitled to declaratory, injunctive, and other equitable relief; and

    d. Whether Plaintiff Parejo-Yepez and the Class Members are entitled to damages and any other available relief.

**Rule 23(a)(3) – Typicality**

46. Plaintiff Parejo-Yepez's claims are typical of the claims of the Class. Plaintiff Parejo-Yepez and all Class Members sustained injuries and damages arising out of and caused by Defendant's common course of conduct and common policies in violation of Federal laws, regulations, and statutes as alleged here.

47. Plaintiff Parejo-Yepez's claims are representative of and basically co-extensive with the claims of Class Members.

**Rule 23(a)(4) – Adequacy of Representation**

48. Plaintiff Parejo-Yepez will fairly and adequately represent and protect the interests of Class Members. Plaintiff Parejo-Yepez is a member of the Class, does not have any conflicts of interest with other Class Members, and will prosecute the case vigorously on behalf of the Class.

49. Plaintiff Parejo-Yepez has retained counsel competent and experienced in complex litigation and in discrimination class actions.

**Rule 23(b)(2) – Declaratory, Equitable, and Injunctive Relief**

50. Class certification is appropriate because CCCU has acted and/or refused to act on grounds generally applicable to members of the Class. CCCU's actions make appropriate declaratory, equitable and injunctive relief with respect to Plaintiff Parejo-Yepez and the Class Members as a whole.

51. CCCU excludes Class Members outright from full and fair consideration for credit or loan products and services on the basis of alienage. The Class Members are entitled to declaratory, equitable, and injunctive relief to end CCCU's common, unfair, and discriminatory policies.

**Rule 23(b)(3) – Superiority of Class Action**

52. A class action is superior to other available means for the fair and efficient adjudication of this controversy. Individual joinder of all Class Members is not practicable, and questions of law and fact common to the Class predominate over any questions affecting only individual Class Members. Each Class Member has been injured and is entitled to recovery by reason of Defendant's unlawful policies and practices of discrimination on the basis of alienage and of denying full and equal access to Defendant's services.

53. No other litigation concerning this controversy has been commenced by or against Class Members.

54. Class-action treatment will allow similarly-situated persons to litigate their claims in the manner that is most efficient and economical for the parties and the judicial system. It is unlikely that individual Class Members have any interest in individually controlling separate actions in this case.

55. Plaintiff Parejo-Yepez is unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action. The benefits of maintaining this action on a class basis far outweigh any administrative burden in managing the class action. Conducting the case as a class action would be far less burdensome than prosecuting numerous individual actions.

### FIRST CLAIM FOR RELIEF
### Alienage Discrimination – Denial of Credit Card Application
### (42 U.S.C. § 1981)

56. Plaintiff Parejo-Yepez incorporates by reference the allegations raised in all preceding paragraphs.

57. Plaintiff Parejo-Yepez brings this claim on her own behalf and on behalf of the Class.

58. Plaintiff Parejo-Yepez and Class Members are persons within the jurisdiction of the United States.

59. Plaintiff Parejo-Yepez and Class Members are aliens.

60. Plaintiff Parejo-Yepez and Class Members have the right to make and enforce contracts in the United States and are entitled to the full and equal benefits of the law.

61. Defendant conducts business in the United States and is obligated to comply with the provisions of 42 U.S.C. § 1981.

62. Defendant intentionally discriminated against Plaintiff Parejo-Yepez and members of the Class on the basis of alienage by denying them access to a full review of their applications for credit and loan products, including credit cards, and consideration for credit and loan products on an equal basis with applicants who are U.S. citizens.

63. Defendant intentionally discriminated against Plaintiff Parejo-Yepez and members of the Class on the basis of alienage by interfering with their right to make and enforce contracts for credit or loan products on the basis of alienage.

64. Plaintiff Parejo-Yepez and Class Members have no plain, adequate, or complete remedy at law to address the wrongs alleged here. Plaintiff Parejo-Yepez and Class Members demand damages, and request that the Court issue a permanent injunction ordering Defendant to alter its policies and practices to prevent future discrimination on the basis of an applicant's alienage and to prevent further violations of 42 U.S.C. § 1981.

65. Plaintiff Parejo-Yepez and Class Members are now suffering, and will continue to suffer irreparable injury from CCCU's discriminatory acts and omissions.

### SECOND CLAIM FOR RELIEF
**Alienage Discrimination – Deterrence from Applying for Home Equity Line of Credit
(42 U.S.C. § 1981)**

66. Plaintiff Parejo-Yepez incorporates by reference the allegations raised in all preceding paragraphs.

67. Plaintiff Parejo-Yepez brings this claim on her own behalf and on behalf of the Class.

68. Plaintiff Parejo-Yepez and Class Members are persons within the jurisdiction of the United States.

69. Plaintiff Parejo-Yepez and Class Members are aliens.

70. Plaintiff Parejo-Yepez and Class Members have the right to make and enforce contracts in the United States and are entitled to full and equal benefit of the law.

71. Defendant conducts business in the United States and is obligated to comply with the provisions of 42 U.S.C. § 1981.

72. Defendant intentionally discriminated against Plaintiff Parejo-Yepez and members of the Class on the basis of alienage by denying them the opportunity and access to a full review of their applications for credit products and CCCU services, including HELOCs, and consideration for credit and loan products on an equal basis with applicants who are U.S. citizens.

73. Defendant intentionally discriminated against Plaintiff Parejo-Yepez and members of the Class by interfering with their right to make and enforce contracts on the basis of alienage.

74. As a result of Defendant's policy and practice that denies applicants on the basis of alienage, Plaintiff Parejo-Yepez and Class Members have suffered harm, including economic losses and emotional distress, to be determined at trial.

75. Plaintiff Parejo-Yepez and Class Members have no plain, adequate, or complete remedy at law to address the wrongs alleged here. Plaintiff Parejo-Yepez and Class Members request that the Court issue a permanent injunction ordering Defendant to alter its policies and practices to prevent future discrimination on the basis of an applicant's alienage and to prevent further violations of 42 U.S.C. § 1981.

76. Plaintiff Parejo-Yepez and Class Members are now suffering, and will continue to suffer irreparable injury from CCCU's discriminatory acts and omissions.

### THIRD CLAIM FOR RELIEF
### Alienage Discrimination – Denial of Personal Loan
### (42 U.S.C. § 1981)

77. Plaintiff Parejo-Yepez incorporates by reference the allegations raised in all preceding paragraphs.

78. Plaintiff Parejo-Yepez brings this claim on her own behalf and on behalf of the Class.

79. Plaintiff Parejo-Yepez and Class Members are persons within the jurisdiction of the United States.

80. Plaintiff Parejo-Yepez and Class Members are aliens.

81. Plaintiff Parejo-Yepez and Class Members have the right to make and enforce contracts in the United States and are entitled to full and equal benefit of the law.

82. Defendant conducts business in the United States and is obligated to comply with the provisions of 42 U.S.C. § 1981.

83. Defendant intentionally discriminated against Plaintiff Parejo-Yepez and members of the Class on the basis of alienage by denying them access to a full review of their applications for credit and loan products, including personal loans, and consideration for credit and loan products on an equal basis with applicants who are U.S. citizens.

84. Defendant intentionally discriminated against Plaintiff Parejo-Yepez and members of the Class on the basis of alienage by interfering with their right to make and enforce contracts for credit and loan products on the basis of alienage.

85. Plaintiff Parejo-Yepez and Class Members have no plain, adequate, or complete remedy at law to address the wrongs alleged here. Plaintiff Parejo-Yepez and Class Members demand damages, and request that the Court issue a permanent injunction ordering Defendant to alter its policies and practices to prevent future discrimination on the basis of an applicant's alienage and to prevent further violations of 42 U.S.C. § 1981.

86. Plaintiff Parejo-Yepez and Class Members are now suffering, and will continue to suffer irreparable injury from CCCU's discriminatory acts and omissions.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Parejo-Yepez and the Class she seeks to represent respectfully request the following relief:

i. Certification of the case as a class action on behalf of the proposed Class Members in the Class;

ii. Designation of Plaintiff Parejo-Yepez as the class representative on behalf of the Class;

iii. Designation of Plaintiff's counsel of record as Class Counsel;

iv. Declaratory judgment that Defendant's policies and practices set forth here are unlawful and violate 42 U.S.C. § 1981;

v. Preliminary and permanent injunction against Defendant and its officers, agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in each of the unlawful policies and practices set forth here and described in preceding paragraphs;

vi. Award of compensatory damages to Plaintiff Parejo-Yepez and Class Members in an amount to be determined at trial;

vii. Costs incurred, including reasonable attorneys' fees and costs to the extent allowable by law;

viii. Pre-judgment and post-judgment interest, as provided by law; and

ix. For such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff Rebecca Parejo-Yepez hereby demands trial by jury for any matters triable to a jury.

Dated: January 28, 2025                                Respectfully submitted,

/s/ Olivia Alden

MEXICAN AMERICAN LEGAL DEFENSE AND EDUCATIONAL FUND

Olivia Alden
100 N. LaSalle St., Suite 1900
Chicago, IL 60602
Phone: (312) 427-0701
Email: oalden@maldef.org

ATTORNEY FOR PLAINTIFFS